IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LINDA HARRIS,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )       Case No. CIV-04-1114-M
                                       )
JO ANNE BARNHART,                      )
Commissioner of the                    )
Social Security Administration,        )
                                       )
            Defendant.                 )

## REPORT AND RECOMMENDATION

Plaintiff Linda Harris seeks judicial review of a denial of benefits by the Social

Security Administration ("SSA").  The Court should reverse and remand for an award of

benefits.[1]

I.      BACKGROUND

Ms. Harris applied for insurance benefits based on a disability.  Administrative Record

at pp. 52-54 (certified Oct. 26, 2004) ("Rec.").  The SSA denied the applications initially and

on reconsideration.  *Id.* at pp. 31-32.  A United States Administrative Law Judge conducted

a hearing, applied the five-step process mandated under 20 C.F.R. § 404.1520(b)-(f), and

rejected the Plaintiff's claims.  *Id.* at pp. 12-19 (decision), pp. 257-93 (hearing).  The Appeals

_____

[1]      The Court has referred the action to the undersigned for findings and recommendations on
dispositive matters.  Order Referring Matter to United States Magistrate Judge (Sept. 9, 2004).

Council declined jurisdiction,[2] and the Plaintiff appealed to this Court.[3] That action resulted in an agreed order and remand for further administrative proceedings. *Id.* at pp. 319-20.

A second United States Administrative Law Judge conducted a hearing, applied the five-step process mandated under 20 C.F.R. § 404.1520(b)-(f), and rejected the Plaintiff's claims. *Id.* at pp. 304-14 (decision), pp. 393-439 (hearing).[4] The Appeals Council declined jurisdiction,[5] and the present action followed.

---

[2]    Rec. at pp. 4-5.

[3]    Rec. at pp. 329-30.

[4]    At step one, the administrative law judge found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Rec. at pp. 306, 313.

At step two, the judge found that Ms. Harris had severe impairments involving fibromyalgia and an affective disorder. *Id.* at pp. 310, 313.

At step three, the judge found that the Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing". *Id.*

At step four, the administrative law judge determined that the Plaintiff retained the residual functional capacity ("RFC") to: (1) occasionally stoop and lift twenty pounds; (2) frequently lift ten pounds; and (3) walk, stand, and sit for six hours out of an eight-hour workday. *Id.* at pp. 310-11, 313. The judge also concluded that Ms. Harris suffered from a mild to moderate level of anxiety and fatigue. *Id.* Based on this RFC, the judge determined that Ms. Harris could not perform her past relevant work. *Id.* at pp. 311, 313.

At step five, the administrative law judge determined that the Plaintiff had the RFC to work in jobs that existed in significant numbers in the national economy. *Id.* at pp. 312-13. Thus, at step five, the judge determined that Ms. Harris was not disabled. *Id.* at pp. 313-14.

[5]    Rec. at pp. 294-96.

In part, Ms. Harris alleges departure from this Court's prior remand order and a lack of substantial evidence for the step five determination.[6]  Plaintiff's Opening Brief at pp.14-19, 26-27; Plaintiff's Reply Brief at p. 5.  The undersigned agrees.

## II.     STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("if the [administrative law judge] failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence").

## III.    FAILURE TO COMPLY WITH THIS COURT'S PRIOR REMAND ORDER

In prior court proceedings, Judge Miles-LaGrange reversed and remanded the denial of benefits and ordered the administrative law judge:

> 1.      [t]o fully evaluate the credibility of Plaintiff's allegatrions of pain and other subjective complaints by considering all relevant evidence, and make credibility findings that are linked to specific evidence of record.

---

[6]      Ms. Harris also alleges: (1) a failure to comply with the Appeals Council's remand order; (2) the erroneous consideration of a treating physician's opinion; and (3) a lack of substantial evidence.  Opening Brief of Plaintiff, Linda S. Harris at pp.14-27 (Feb. 10, 2005) ("Plaintiff's Opening Brief"); Plaintiff's Reply Brief at pp. 1-6 (Apr. 22, 2005) ("Plaintiff's Reply Brief").  But the Court need not address these arguments in light of the conclusion discussed in the text. *See infra* pp. 3-18.

2.     [t]o re-evaluate Dr. Harley's residual functional capacity (RFC) assessment.  If the [administrative law judge] ultimately finds that the record does not support Dr. Harley's opinion, the [administrative law judge] will provide specific, legitimate reasons for rejecting the opinion.

3.     [t]o re-evaluate the medical evidence and re-assess Plaintiff's RFC. The [administrative law judge] should include in his decision a discussion of the weight he gives to the evidence of record and what evidence supports his ultimate RFC finding.

Rec. at pp. 319-20.  The Plaintiff argues that the second administrative law judge had failed to comply with these instructions,[7] and the undersigned agrees.[8]

A.     Duty to Comply with the Remand Order

"Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."  *Sullivan v. Hudson*, 490 U.S. 877, 866 (1989); *see also Horrell v. Chater*, 54 F.3d 787, 1995 WL 275704, Westlaw op. at 2 (10th Cir. May 10, 1995) (unpublished op.) (reversing the SSA's determination on grounds that it had contradicted the federal appellate court's prior order).

---

[7]     Plaintiff's Opening Brief at pp. 14-19.

[8]     Ms. Harris also contends that the second administrative law judge had failed to comply with the Appeals Council's remand order.  Plaintiff's Opening Brief at pp. 14, 19.  The Court need not address this issue.  *Cf. Gallegos v. Apfel*, 141 F.3d 1184, 1998 WL 166064, Westlaw op. at 1 (10th Cir. Apr. 10, 1998) (unpublished op.) ("Plaintiff's challenge to the [administrative law judge's] adherence to the Appeals Council's remand order is not cognizable by this court.").

B.      Pain

After the remand, the administrative law judge found that the Plaintiff had suffered

from fibromyalgia.  Rec. at p. 319.  At both hearings, the Plaintiff testified that this condition

had resulted in intense, migrating pain.

For example, at the first hearing, the testimony was:

Q.      All right.  Where do you have pain?

A.      I have it in my wrists, in my shoulders, in my back, in my hips, in my
        knees, in my ankles, in my feet.

Q.      All right.

A.      My elbows.

Q.      Can you tell if it's in the joints or if it's in the muscles?

A.      Well, like in shoulders, my shoulders, it feels like the whole thing is burning.
        That's the only thing I can – for myself that's the only thing when you touch
        it, you know, put any kind of pressure on it.

*Id.* at p. 273.

At the second hearing, the Plaintiff elaborated on the pain from the fibromyalgia:

Q.      All right.  And – how does the fibromyalgia affect you other than the
        fatigue that the doctors have constantly noted?

A.      Well, it's the pain part, you know.  Like I said, sometimes when Dr.
        Harley would do that test, he would do the pressure point thing, and it
        wouldn't hurt when he did it.  Like 15 minutes – half-hour later, I could
        feel his fingerprints –

Q.      Still?

A.      – in my – and it would hurt then.

Q.      Okay.

A.      And it's just not ever knowing what kind of a day you're going to have.

Q.      Is it always in the same place or –

A.      No.

Q.      – does the pain migrate around over your body?

A.      Yeah, it migrates.  Like today it's in my wrists and my elbows.

Q.      What body parts has it affected?

A.      My wrists, my elbows, my hips, my knees, my ankles – down by my
        ankles.

Q.      How about the back and shoulders?

A.      Yeah, my back - oh, yeah.  My – the burning's in here.

Q.      In both shoulders?

A.      Shoulders.  Sometimes it just burns.

Q.      And this has been ongoing?

A.      It's been ongoing.

*Id*. at p. 427.  Ms. Harris also described the frequency of the pain:

Q.      Okay.  At your last hearing, you had described this I believe as feeling
        like you have a constant case of flu?

A.      Yes, it's like having – my bad days are like the worst day of a flu.

. . . .

Q.      Out of a 30-day month, how many good days will you have?

A.      I'm thinking 10.

6

Q.      So 20 days out of the month you feel like you have the flu?

A.      Yeah, to some degree.  You know what I mean?  It's not the –

*Id*. at p. 428.

In the RFC assessment which the administrative law judge was to reevaluate, Dr. John Harley stated that Ms. Harris had bilateral pain in the lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, hips, legs, knees, ankles, and feet.  *Id*. at pp. 252-53.  Dr. Harley added that the pain was "[c]ontinuous" and "very severe" and that Ms. Harris was not "'acting'" and was not a "malingerer".  *Id*.  Dr. Harley was asked about the frequency of the pain.  In response, he stated that the impairments were likely to produce "'good days'" and "'bad days'" and that on average Ms. Harris would "likely . . . be absent from work . . . much more than half the time."  *Id*. at 255-56.

As noted above, the Court directed the administrative law judge on remand to fully evaluate the Plaintiff's credibility, to reevaluate Dr. Harley's RFC assessment, and to "provide specific, legitimate reasons" for any rejection of the physician's assessment.  *Id*. at p. 319; *see supra* pp. 3-4.

On remand, the administrative law judge stated that Dr. Harley's RFC assessment was inconsistent with the Plaintiff's testimony and other evidence.  Rec. at p. 310.  For example, the judge pointed out that the Plaintiff could walk, use the computer, drive, and perform household chores.  *Id*.; *see id*. at pp. 411-14.  In addition, the judge explained that the

Plaintiff had discontinued her pain medication and that the record lacked evidence of muscle atrophy, reduced joint motion, muscle spasm, or sensory and motor disruption. *Id.* at p. 310.[9] These rationales disregarded the evidence by both Dr. Harley and Ms. Harris that the pain was intermittent but would ultimately prevent work more than half of the days in an average month. *See supra* pp. 6-7.

As pointed out by the administrative law judge, the Plaintiff testified that she had discontinued her pain medication. *See supra* pp. 7-8. But Ms. Harris explained that she had discontinued the medications because they made her sick. Rec. at pp. 280, 418. In written submissions, the Plaintiff's husband added that Ms. Harris' doctor had agreed with the decision to discontinue the medications because of their side effects. *Id.* at p. 103.[10]

---

[9]     The Plaintiff testified that she had seen Dr. Harley approximately once or twice per year for less than an hour on each visit. Rec. at p. 309; *see id.* at p. 408. From this testimony, the Defendant represents that the administrative law judge had "questioned whether Dr. Harley's treatment relationship with Plaintiff would allow him to accurately assess Plaintiff's work-related limitations." Brief in Support of the Commissioner's Decision at p. 8 (Apr. 9, 2005). The Defendant supplies no authority for this representation, and none exists. The judge remarked that the Plaintiff's testimony was "significant to note," but did not state that the infrequency or brevity of the appointments was a reason to reject Dr. Harley's opinions. *See* Rec. at p. 309. Such an explanation would have been questionable, as Dr. Harley had believed that the prognosis was "poor" and that Ms. Harris' condition would not improve with therapy. *Id.* at p. 251.

[10]     Ms. Harris argues that the administrative law judge had erred by failure to discuss the husband's correspondence. Plaintiff's Opening Brief at pp. 25-26. But the judge had no separate duty to discuss the husband's correspondence. *See Standlee v. Barnhart*, 125 Fed. Appx. 938, 941 (10th Cir. Feb. 3, 2005) (unpublished op.) ("While the [administrative law judge] did not specifically discuss the testimony of [the claimant's] mother, we do not believe this omission is grounds for remand given the nature of her mother's testimony, which appears largely cumulative of [the claimant's] own testimony." (citation omitted)); *see also Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) ("We decline claimant's invitation to adopt a rule requiring an [administrative law judge] to make specific written findings of each witness's credibility, particularly where the written decision reflects that the [administrative law judge] considered the testimony.").

The administrative law judge also pointed to the absence of evidence involving evidence of muscle atrophy, reduced joint motion, muscle spasm, or sensory and motor disruption. *See supra* pp. 7-8. This reasoning displays a misunderstanding about the nature of the Plaintiff's disease, fibromyalgia. The Tenth Circuit Court of Appeals explained: "Because fibromyalgia, the condition afflicting claimant, is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that claimant does not suffer from a potentially disabling condition." *Lantow v. Chater*, 98 F.3d 1349, 1996 WL 576012, Westlaw op. at 1 (10th Cir. Oct. 8, 1996) (unpublished op.) (citation omitted).

A similar situation arose in *Moore v. Barnhart*, 114 Fed. Appx. 983 (10th Cir. Nov. 19, 2004) (unpublished op.). There the Tenth Circuit Court of Appeals held that the administrative law judge had misperceived the nature of fibromyalgia, resulting in a failure to consider the treating physician's opinions and the plaintiff's statements about her symptoms. *See Moore v. Barnhart*, 114 Fed. Appx. at 990. The appellate court explained:

> Patients with [fibromyalgia . . . syndrome] usually look healthy. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation. In addition, muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness.

*Id.* at 991-92.

This rationale is equally applicable here.  The administrative law judge relied in part on the absence of tests reflecting muscle atrophy, sensory loss, and motor loss,[11] but the negative results were consistent with a diagnosis of fibromyalgia.

One of the principal symptoms of this disease is "'pain all over . . . .'"  *Moore v. Barnhart*, 114 Fed. Appx. 983, 991 (10th Cir. Nov. 19, 2004) (unpublished op.) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).  The Plaintiff testified that she had experienced pain approximately twenty days in an average month,[12] and Dr. Harley also believed that the condition would prevent Ms. Harris from working more than half of the workdays in an average month.[13]  This Court expressly required the administrative law judge to address Ms. Harris' testimony and Dr. Harley's RFC assessment.  *See supra* pp. 3-4.  Rather than do so, the judge responded with generalities that disregarded the nature of Ms. Harris' fibromyalgia.  *See supra* pp. 7-8.  The generality of the discussion violated this Court's remand order, creating reversible error.

C.    Limitations in Reaching, Handling, and Fingering

Ms. Harris also testified that she had little strength in her hands.  The exchange was:

Q.    It hurts?

A.    I don't have any strength in my hands.

---

[11]    *See supra* pp. 7-8.

[12]    *See supra* pp. 6-7.

[13]    *See supra* p. 7.

Rec. at p. 273.  In his RFC assessment, Dr. Harley stated that Ms. Harris had "continuous", "very severe" bilateral pain in her arms, hands, and fingers and could spend only 10% of her time in a typical workday grasping, turning or twisting objects, reaching, or conducting "fine manipulations."  *Id.* at pp. 253, 255.  Nonetheless, the administrative law judge never discussed this portion of Ms. Harris' testimony or of Dr. Harley's RFC assessment.

The omission was significant in light of the jobs that the administrative law judge said that Ms. Harris could perform.  The judge adopted the vocational expert's ("VE") testimony, which included three jobs:  silver wrapper, deli cutter-slicer, and shelving clerk.  Rec. at pp. 312-13.[14]  According to the Dictionary of Occupational Titles, the wrapping of silver requires "constant" reaching, handling, and fingering; the job of "deli cutter-slicer" requires "frequent" reaching and handling and "occasional" fingering; and work as a library shelver requires "frequent" reaching, handling, and fingering.  Dictionary of Occupational Titles 249.687-014, 316.684-014, 318.687-018 (rev. 4th ed. 1991).

The VE acknowledged that Dr. Harley's evaluation would eliminate many of these jobs.  The testimony was:

> Q.     If our hypothetical individual's ability to handle and in that sense grasp, turn, or twist objects to manipulate in a fine manner no more than 10 percent of an eight-hour work day, would that eliminate all work?

---

[14]     The administrative law judge said that the VE had included three other jobs: claim processor, hospital administrative clerk, and medical voucher clerk.  Rec. at p. 312.  But the administrative law judge erred when he included these jobs, as the VE had stated that the Plaintiff could only work as a silver wrapper, deli cutter-slicer, or shelving clerk.  *Id.* at pp. 435-36.  As a result, the Defendant concedes that the administrative law judge's reference to other jobs was erroneous and that the only potential positions for the Plaintiff were as a silver wrapper, deli slicer, and shelving clerk.  Brief in Support of the Commissioner's Decision at p. 11 n.1 (Apr. 9, 2005).

A.      It would – on a competitive basis, I think it would be fair to say it would eliminate competitive work on an eight-hour work day or 40-hour work week.

Rec. at p. 437.

The administrative law judge was obligated under the prior remand order to reevaluate Ms. Harris' credibility and Dr. Harley's RFC assessment.  If the prior remand order had been followed, the Court would have been able to effectively review the administrative law judge's ultimate conclusion that Ms. Harris could perform the three jobs notwithstanding her testimony and Dr. Harley's assessment involving significant limitations in reaching, handling, and fingering.  But the judge did not do so, leaving one to speculate why he believed that Ms. Harris could perform the three jobs with the physical limitations corroborated by Dr. Harley.  The lack of explanation in the decision constitutes reversible error.  *See Lawton v. Barnhart*, 121 Fed. Appx. 364, 374-75 (10th Cir. Feb. 7, 2005) (unpublished op.) (concluding that the administrative law judge had erred through a failure to state why he had rejected a consulting physician's opinion that the plaintiff could not handle, finger, or feel with his left hand).

IV.     IMPRECISION OF THE VOCATIONAL TESTIMONY

At step five, the administrative law judge asked the VE a hypothetical question, which did not include a limitation regarding pain.  Rec. at p. 434.  In response, the VE stated that

12

the Plaintiff could work as a silver wrapper, deli cutter-slicer, or shelving clerk.  *Id*. at pp. 435-36; *see supra* p. 11.  The administrative law judge relied on the VE's testimony in concluding that the Plaintiff could perform other work at step five.  Rec. at pp. 312-13.

According to Ms. Harris, the judge should have included limitations involving pain in the hypothetical question.  Plaintiff's Opening Brief at pp. 26-27; Plaintiff's Reply Brief at p. 5.  As a result, the Plaintiff contends that administrative law judge's step five determination lacked substantial evidence.  *Id*.  Ms. Harris is correct.

A.   Evidence Regarding the Plaintiff's Pain

Doctors Cynthia Weaver and John Harley treated the Plaintiff for fibromyalgia.  *See* Rec. at pp. 156-57, 216-25, 251-56.  Fibromyalgia causes "'pain all over.'"  *Supra* p. 10 (citation omitted).  Based on an examination in October 1998, Dr. Weaver described the Plaintiff as:

> hav[ing] tender points present over two areas along the trapezius muscle, over C-7, in-between second and third intervertebral process, over bicipital tendons, and sternoclavicular joints bilaterally.  She ha[d] tenderness on palpation over lateral epicondyles, wrists, lower lumbar spine, SI joints, and upper and outer quadrant of the buttocks and greater trochanters.  Mild tenderness was also noted over medial knees.  She also had some mild crepitus noted over knees as well as Hebredon's and Bouchard's nodes.

Rec. at p. 156.  The physician added that Ms. Harris "may have increasing problems with pain."  *Id*. at p. 157.

In June 1999, Dr. Harley stated that Ms. Harris "ha[d] the tender points supporting the diagnosis of fibromyalgia and ha[d] failed to respond to medications . . . ."  *Id.* at p. 216.  In June 2000, Dr. Harley stated that the Plaintiff had suffered from "multiple tender points" and

continuous, bilateral pain in her lumbrosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands, fingers, hips, legs, knees, ankles, and feet. *Id.* at pp. 252-53.

At the administrative hearing, the Plaintiff testified about the effects of her fybromyalgia. According to Ms. Harris, she suffered ongoing pain that migrated through her wrists, elbows, hips, knees, ankles, back, and shoulders. *See supra* pp. 5-6. The Plaintiff testified that out of 30 days, she might have 10 "good" days, with the remaining 20 days feeling like she had influenza. *See supra* pp. 6-7.

B.   Omission of Pain in the Hypothetical Question

To constitute substantial evidence, hypothetical questioning of a VE must reflect all of the claimant's impairments which are borne out by the evidentiary record. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Because the administrative law judge acknowledged the existence of fibromyalgia, the judge did not completely reject Ms. Harris' allegations of pain and the hypothetical questioning should have included corresponding limitations.

At step two, the administrative law judge found that the Plaintiff had fibromyalgia, a pain-producing ailment. Rec. at pp. 310, 313; *see supra* pp. 10, 13 & note 4. After discounting Dr. Harley's June 2000 findings concerning the pain,[15] the administrative law judge apparently acknowledged that Ms. Harris suffered from some pain.[16] As a result, the

---

[15]     *See* Rec. at p. 310.

[16]     *See* Rec. at pp. 307, 310 (reliance on Dr. Weaver's opinions concerning the Plaintiff's pain); *id.* at p. 313 ("The claimant's subjective complaints of pain and symptomology are credible to the extent that they reduce her residual functional capacity to light labor.").

administrative law judge had to include limitations relating to pain in the hypothetical question presented to the VE, and the failure to do so constituted error.[17]

The Tenth Circuit Court of Appeals addressed a similar situation in *Crossno v. Chater*, 1996 WL 594275 (10th Cir. Oct. 17, 1996) (unpublished op.).  There the plaintiff alleged a disability based on an exostosis[18] of the right finger and arthritis in her knees, hips, and hands.  *See Crossno v. Chater*, 1996 WL 594275, Westlaw op. at 1.  The plaintiff testified that the exostosis had resulted in pain and an inability to grip objects.  *See id.*  At step two, the administrative law judge recognized that the exostosis was a severe impairment.  *See id.* In the hypothetical question to the VE, the administrative law judge mentioned the arthritis, but failed to mention any limitations associated with the exostosis.  *See id.*, 1996 WL 594275, Westlaw op. at 2.

The Tenth Circuit Court of Appeals concluded that this omission rendered the hypothetical question flawed, which in turn rendered the step five decision lacking in substantial evidence.  The court explained:

---

[17]    The administrative law judge stated that during the cross-examination of the VE, the Plaintiff's counsel presented hypotheticals based on "facts not in evidence."  Rec. at p. 312.  The judge then discounted a limitation in the ability to sit.  *Id.*  However, the judge did not refer to the Plaintiff attorney's inclusion of pain in his hypothetical question.  *See* Rec. at pp. 436-37.

[18]    An "exostosis" is a benign bone tumor consisting of an outgrowth of bone with a cartilaginous cap.  *See Crossno v. Chater*, 1996 WL 594275, Westlaw op. at 1 n.2.

> [The hypothetical] inquiry recognizes the arthritic condition. . . while omitting
> any mention of the exostosis and attendant surgery affecting plaintiff's index
> finger -- that is, the single, particularized impairment reflected in the pre-cutoff
> evidence and previously acknowledged as severe by the [administrative law
> judge].   "[T]he [administrative law judge's] failure to include in his
> hypothetical inquiry to the vocational expert *any* limitation in this [latter]
> regard violated the established rule that such inquiries must include all (and
> only) those impairments borne out by the evidentiary record."

*Id.* (emphasis in original; citation omitted).  In addition, the appellate court stated that even

if the reference to arthritis in the hands had been meant to encompass the exostosis, the

hypothetical question would have remained deficient because it had focused solely on pain

and not on a loss of function.  *Id.*  The court emphasized that the omission was "particularly

problematic" given the administrative law judge's finding that the exostosis was itself a

severe impairment.  *Id.*

     *Crossno v. Chater* is persuasive.  *See* Tenth Cir. R. 36.3(B).  Here, the administrative

law judge acknowledged the fibromyalgia as severe at step two, but failed to encompass any

limitations involving pain from the disease in the hypothetical questions to the VE.  *See*

*supra* p. 12 & note 17.  As in *Crossno v. Chater*, the omission constituted a critical error.[19]

Because the hypothetical questioning of the VE was incomplete, reliance on his testimony

---

[19]    *See Kelly v. Chater*, 1997 WL 264371, Westlaw op. at 10 (N.D. Iowa Mar. 9, 1997)
(unpublished op.) ("Because her fibromyalgia is documented, it should have been included in the
hypothetical the [administrative law judge] posed to the vocational expert."); *see also Duncan v.
Apfel*, 156 F.3d 1243, 1998 WL 544353, Westlaw op. at 2 (10th Cir. Aug. 26, 1998) (unpublished
op.) (noting the inconsistency of a finding that fibromyalgia is severe at step two and insignificant
at step five).

at step five was improper and the administrative law judge's determination at step five lacked substantial evidence.[20]

## V.   RECOMMENDATION OF AN AWARD OF BENEFITS TO THE CLAIMANT

Because of the error committed at step five, the Court should reverse the SSA's denial of benefits.  With the reversal, the Court must decide whether to remand to the SSA for further hearing or direct an award of benefits.  *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  Three factors strongly support reversal and remand with instructions for an award of benefits.

The first factor is the delay.  Ms. Harris applied for benefits approximately 6½ years ago,[21] and further delay would be inequitable.[22]

The second consideration is the fact that the SSA has already provided two administrative hearings and two reviews by the Appeals Council.  *See supra* pp. 1-2.  "The [SSA] is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'"  *Sisco v. United States*

---

[20]     *See Crossno v. Chater*, 1996 WL 594275, Westlaw op. at 3 (10th Cir. Oct. 17, 1996) (unpublished op.) (in light of a flawed hypothetical question, the VE's testimony did not constitute substantial evidence for the administrative law judge's step five finding); *see also Tate v. Chater*, 94 F.3d 656, 1996 WL 466666, Westlaw op. at 2 (10th Cir. Aug. 16, 1996) (unpublished op.) (hypothetical opinion testimony by a VE, which did not include a limitation established by uncontradicted medical evidence, cannot constitute substantial evidence for the denial of benefits).

[21]     Rec. at pp. 52-54.

[22]     *See Sisco v. United States Department of Health and Human Services,* 10 F.3d 739, 746 (10th Cir. 1993) (award directed when the claim was pending seven years); *Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993) (award directed when the claim was pending six years).

*Department of Health and Human Services*, 10 F.3d 739, 746 (10th Cir. 1993) (citation omitted).

The third factor is the absence of vocational evidence that Ms. Harris could work with the physical restrictions placed on her by Dr. Harley.[23]   *See supra* pp. 3-12.  This factor is significant because the SSA bears the burden of proof at step five.  *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) (remanding for an award of benefits in part because the defendant had failed to satisfy its burden of proof at step five).

The combination of these factors should result in directions for payment of insurance benefits, rather than reconsideration by the SSA.

VI.   SUMMARY AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends reversal and remand, with directions to award insurance benefits to the Plaintiff.  The amount of the payments should be left to the SSA on remand.

Any party may file written objections with the Clerk of the United States District Court.  *See* 28 U.S.C.A. § 636(b)(1) (2000).  The objections are due June 13, 2005.  *See*

---

[23]   In similar circumstances, the Tenth Circuit Court of Appeals reversed with instructions to award benefits, explaining:

> There is no vocational evidence that claimant can work based on Dr. Parsons' opinion.  Moreover, the [administrative law judge] inappropriately rejected Dr. Sikka's opinion as to claimant's limitations, and the VE could not identify a job that claimant can do with these restrictions.  This case is therefore in a posture to be remanded for an immediate award of benefits.

*Bibbs v. Apfel*, 3 Fed. Appx. 759, 763-64 (10th Cir. Jan. 19, 2001) (unpublished op.).

W.D. Okla. LCvR 72.1(a).  If a party does not file written objections by June 13, 2005, she would waive any right to appellate review.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

VII.   STATUS OF THE REFERRAL

The referral is terminated.

Entered this 23rd day of May, 2005.


Robert E. Bacharach
United States Magistrate Judge